Argued September 16; modified October 13; rehearing
denied December 8, 1931

## HULL v. HEIMRICH ET AL.

(3 P. (2d) 758, 6 P. (2d) 41)

*R. C. Bradshaw,* of Portland (Joseph, Haney & Veatch, of Portland, on the brief), for appellant.

*O. B. Thorgrimson,* of Seattle, Wash. (Bronaugh & Bronaugh, of Portland, and Preston, Thorgrimson & Turner, of Seattle, Wash., on the brief), for respondent Rose L. Hull.

*J. P. Kavanaugh,* of Portland (Bowerman & Kavanaugh, of Portland, on the brief), for respondent Stephen A. Hull.

KELLY, J. The writer is impressed with the accuracy of the trustee's records. No substantial discrepancy has been shown therein. They reflect the course actually taken by the trustee. The questions confronting us herein are not of bookkeeping or accuracy to any appreciable degree; but are questions of law, as to the duty of the trustee, and of fact, as to the title of said 70 shares of corporate stock in the Pacific Warehouse Company.

■■ Objection is urged by plaintiff to the allowance by the probate court of a fee to defendant Heimrich for his services as executor in the sum of $10,900.05, and also to the allowance of a fee in the sum of $2,500 to his attorneys for their services as his attorneys in administering the estate in said court. There is no

provision in the will that the executor shall not receive the fees prescribed by law, nor to the effect that no fee shall be allowed to his attorneys for their services in the administration of said estate. We think the learned circuit judge was in error when he disallowed these fees, and held that the trustee should reimburse the estate for them.

■ In the opinion of the writer, there is merit in the contention that these fees should have been paid from the corpus of the estate and not from the income derived therefrom. If, in this case, we had to deal with the tenant for years or for life as one of the parties and the remainderman as the other party, we could remedy any injustice which might have ensued by reason of the payment of these fees from the income rather than from the corpus; but the plaintiff has survived the expiration of the term of the trust and is entitled to her share, not only of the income but also of the corpus of the estate from which these fees should have been paid; hence, no good purpose would be served in determining what amount the plaintiff as the party entitled to her share of the income should. receive from the plaintiff as the party entitled to her share of the corpus.

The question concerning the propriety of loaning the money to the Great Southern Railroad Company requires a review of facts. When John Heimrich passed away, he was the owner of 575 shares of capital stock of this railroad company and of 386 of its first mortgage debenture bonds. These two items were appraised at the aggregate value of $276,999.99, the stock being appraised at one-third and the bonds at two-thirds of their par value. This railroad extended from The Dalles to Dufur. Wheat was the principal

commodity shipped over that line. The testimony discloses that trucking made inroads into the rail shipments of wheat to such an extent as to render the operation of the railroad a losing venture. By extending the ᴿoad a distance of six miles to Friend, where there wᵥ a large stand of timber, securing some cars suitable ᴸ r hauling lumber and making some betterments upon the roadbed and bridges, the trustee sought to secure a tonnage of logs and lumber which would enable the road to operate at a profit. This was the motive which impelled him to loan funds of the trust estate to the railroad company. The record discloses an increase in tonnage for a year or two, and then such inactivity in shipping as to render the operation of the railroad unprofitable. Defendant Hull, plaintiff's husband, was second vice president of the railroad company, at times consulted with defendant Heimrich as to the proposed sale of the railroad, at one time undertook to interest a prospective purchaser therein; and, unquestionably, had a general knowledge of its affairs. Semi-annual statements were regularly furnished plaintiff by defendant Heimrich from which it was evident that dividends were not forthcoming from the railroad company.

Interest on the bonds of said company owned by this estate was paid as follows:

| | |
|---|---:|
| July 19, 1913 | $ 5,622.22 |
| July 19, 1913 | 702.78 |
| Jan. 12, 1914 | 9,650.00 |
| July 8, 1914 | 9,650.00 |
| Jan. 4, 1915 | 9,650.00 |
| | $35,275.00 |

At approximately the same time loans were made by the trustee of said company as follows:

| | |
|---|---:|
| June 21, 1913 | $12,000.00 |
| June 30, 1914 | 14,750.00 |
| Dec. 30, 1914 | 6,000.00 |
| | $32,750.00 |

■ It will be observed that the interest received from the railroad company during this period exceeded the loans made by the trustee to said company. Under an express provision of the will of his father, the trustee was authorized to exercise his discretion as to whether to allow interest overdue on said bonds to continue delinquent. If the trustee had not taken the interest upon said bonds, as he did, he would have acted strictly within the letter of his authority under the terms of the will. Taking the interest on the bonds and then loaning a less amount to the company does not constitute such a departure from the terms of his trust as to render him liable for the amount loaned at that time. "One seeking equity must do equity." It would be inequitable, in the light of the authority thus given to the trustee by said will, for the plaintiff to retain her proportion of these interest payments, and also insist upon surcharging the trustee with the lesser sum loaned to the company at the time the interest payments were made. The will also authorized the trustee to accept other bonds of said railroad company in lieu of the amount unpaid upon the bonds owned by the testator at the time of his death. For these reasons, we hold that, as to the loans to the railroad company above set forth, the trustee is entitled to credit upon producing, as part of the assets of the trust

estate, bonds of said company in the amount therein indicated, to wit, $32,750, together with interest from the dates of the respective loans.

■ The trustee was not authorized to loan the money of the estate to the railroad company; and, except as to the loans last above mentioned, he is properly chargeable with the amount so loaned by him to said company.

. ■ The trustee argues that, because the estate consisted largely of the capital stock and bonds of the railroad company, he was justified in making loans to such company in order to protect the estate from loss and depreciation which would ensue from a discontinuance of its business. The vice of this argument lies in its assumption that, in the absence of express authority, the trustee would be justified in using the funds of the trust estate to continue the business of the testator. In order to justify a trustee in taking such a course, the testator's intention to confer a power on such trustee to carry on the business, formerly conducted by said testator, must be found in direct and unequivocal language of the will. In the case at bar, there is no such authority given. It is the duty of the trustee to close up the trade of his testamentary testator, withdraw the fund and invest it in proper securities at the earliest convenient moment, and this rule applies, although the trustee may have been the business agent or partner of the testator. Perry on Trusts and Trustees (7th Ed.), section 454, cases cited under notes 72, 73 and 74.

■ As to the loans aggregating $101,000 from the trust estate to the Manchester Box and Lumber Company and those aggregating $16,900, to the Wasco Pine Box and Lumber Company, these were loans made by the

trustee to companies of which he was the actual owner. The transactions were tantamount to those wherein a trustee loans money of his trust estate to himself. With these loans his account should be surcharged.

"In the United States most courts do not sanction the investment of trust funds by a trustee in stock of private business corporations in the absence of permissive statute or authority in the instrument creating the trust. * * * The reasoning is, that trustees can not use the trust fund in carrying on a private manufacturing establishment, * * * and that there is no difference in principal between carrying on such enterprises themselves with the trust fund, or lending it to other individuals to do so on their personal security, and buying shares or stocks in such business corporation carried on by other private individuals, or by the trustees themselves, as officers or agents." Perry on Trusts and Trustees (7th Ed.), section 456, cases cited in note 91.

The case of *Jordan v. Jordan*, 192 Mass. 337 (78 N. E. 459), cited by defendant Heimrich, deals with the question of whether the expense of improving a building for the convenience of tenants should be borne by the corpus or by the income of the estate. It does not decide that money of the estate may be loaned to a corporation in financial difficulties upon its unsecured promissory notes in order to protect the estate from loss by the depreciation in the value of such corporation's stocks and bonds, part of which are owned by the estate.

*Harvard College et al. v. Amory*, 26 Mass. (9 Pick) 446, is not a case where loans were made to a corporation in an attempt to save to the estate the value of stock therein held by the estate; but it is a case wherein the trustees invested in stock in a manufacturing concern in which the testator had also invested and the court

held that the fact that the testator had so invested should be considered in determining whether the trustees acted prudently in also purchasing such stock.

*Follansbe v. Kilbreth,* 17 Ill. 522 (65 Am. Dec. 691), deals with the relation of purchasers of certain real property when the title is taken in the name of complainants' vendor. Complainants made default and three years ensued before they attempted to hold their vendor accountable. The court held that the duty rested upon complainants to act with reasonable diligence either by notifying their vendor that they had rescinded, or by making payment of the purchase price, or by exercising some other remedy available to them.

*Torrence v. Davidson,* 92 N. C. 437 (53 Am. Rep. 419), approves the following course by an administrator in attempting to collect a debt owing to deceased, namely, the advancement of an additional sum to the debtor, and the acceptance of a mortgage securing the original claim as well as the amount advanced.

In *Nagle v. Robins,* 9 Wyo. 211 (62 P. 154), the supreme court of Wyoming approved the purchase of the controlling stock in a corporation by a guardian in order to prevent the purchase thereof by a third party whose marital difficulties with the ward's mother had rendered him hostile both to the mother and the son. It does not deal with the propriety of loaning money on mere corporate notes, where, as in the case at bar, financial clouds enshrouded the corporation giving such notes. A dissenting opinion by Mr. Justice Coon appeals to the writer as expressing a principle better adapted to the protection of cestui que trustent than the prevailing opinion, and this without placing upon trustees any more onerous duty than to follow the plain mandate of the law as expressed in Wyoming by a provision in its constitution.

This principle has been approved by this court, speaking through Mr. Justice HENRY J. BEAN, who said:

"A trustee ought to invest in government or state securities, or other gilt-edged securities, or in bonds or mortgages on unincumbered real estate." 1 Perry on Trusts, section 452; Roach's Estate, 50 Or. 179, 197 (92 P. 118).

" 'There is one rule,' says Mr. Perry in his work on Trusts, volume 1, section 453, 'that is universally applicable to investments by trustees, and that rule is, that trustees can not invest trust-moneys in personal securities * * *. There must be express authority in the instrument of trust to authorize a loan on personal promises.' In short, the law holds a trustee to a strict accountability and responsibility for a faithful performance of the duties of his trust." *Boehmer v. Silverstone*, 95 Or. 154, 171 (174 P. 1176, 186 P. 26, 31).

On April 30, 1908, the capital stock of the Pacific Warehouse Company was issued. Of this, six shares of the par value of $200 each were issued to one W. J. Hamlet, six shares to defendant Hull, and one share to defendant Hull as trustee. Other shares of this stock were issued with which, however, we are not concerned.

On June 11, 1908, the one share issued to defendant Hull, as trustee, was transferred and reissued to John Heimrich. On December 7, 1908, an agreement was executed by Hull-Hamlet & Company, a Washington corporation, W. J. Hamlet, S. A. Hull (defendant) and John Heimrich, by the terms of which certain claims against Hamlet were settled and discharged in consideration of the assignment and transfer by Hamlet to Heimrich of the said six shares of stock in the Pacific Warehouse Company, the assignment and transfer of certain shares of stock in another corpora-

tion, and the execution and delivery to said Heimrich of a warranty deed to a certain piece of real property in King county, Washington.

Defendant Hull contends that at the time of the transfer of these six shares of stock, he, Hull, was the owner of them. In his brief, he says: "It is not unusual that the stock was later surrendered to him (Hamlet) and issued direct to Heimrich." It is unusual, however, if Hull owned the stock and it was being transferred to Heimrich only as collateral security, in a written memorandum executed by the parties thereto "to avoid the expense and delays incident to litigation in order to determine definitely their respective rights," that nothing whatever should be said indicating that the transfer of the six shares of stock in question was for the purpose only of collaterally securing the payment to Heimrich of the payment of Hull's obligation. The writing is a formally executed document signed by Heimrich, Hull and Hamlet and executed for Hull-Hamlet & Company by S. A. Hull, its president, and J. H. Longbottom, its secretary, with the seal of said corporation duly affixed.

It has not escaped our observation that the phrase used in designating the subject of the assignment by Hamlet to Heimrich is "all the right, title and interest" of said Hamlet in the same; but there is no suggestion that Hull was the actual owner of said stock or had any interest therein, or that the same is being transferred as collateral security. This memorandum of agreement recites that John Heimrich assumes and agrees to pay William Meister, and has paid to Hamlet one thousand three hundred and seventy-five dollars ($1,375). It will be remembered that the par value of these six shares, when so assigned, was but $200

per share, aggregating $1,200; the interest of Hamlet in the other companies was nominal. The undivided half-interest in lot 17, block 10, of Gilman's Addition to Seattle and the five acres in section 7, township 23 north, range 4 east of the Willamette meridian, also transferred as aforesaid by Hamlet to Heimrich, was mortgaged in the sum of seven hundred and twenty-five dollars ($725).

In February, 1909, the capital stock of the Pacific Warehouse Company was increased ten-fold, thus giving Heimrich 70 shares for his seven shares and Hull 60 shares for his six shares. The title to the 70 shares last above mentioned is at issue. Defendant Hull claims that the title thereto is in him, and says that the reason that he has not heretofore instituted any legal proceedings to recover this corporate stock is that it was pledged as collateral security for the payment of a certain note dated June 22, 1910, executed by him in favor of John Heimrich in the sum of $21,-945.38. Dividends upon the Pacific Warehouse Company stock were paid. Each dividend upon the 70 shares in dispute was $140. Each dividend upon the 60 shares owned by Hull was $120. While Mr. Heimrich, Sr., lived, Mr. Hull deposited these dividends in the First National bank of Seattle to the credit of Mr. Heimrich's account, and forwarded duplicate deposit slips therefor to Mr. Heimrich, who was living in Portland. On January 19, 1911, a deposit slip for "Dividend No. 1, Pacific Warehouse Co., Jan., 1911," in the sum of $140, carrying two items, namely, $130 and $10, is among the exhibits. No reference whatever is made thereon to the effect that it constitutes a payment upon the note. It is in the handwriting of Hull, including the words above quoted. On the same day, January 19, 1911, a deposit slip of which a dupli-

cate is in the record in the sum of $120, bearing this notation in Mr. Hull's handwriting, "1st payment on S. A. Hull note—1st dividend Pacific Warehouse Co."

A duplicate slip is in the record dated February 6, 1911, in the sum of $120. It bears the notation in Mr. Heimrich's handwriting, "Payment on S. A. Hull note." Bearing the same date, another slip in the sum of $140 has no notation as to how it shall be applied, a slip bearing date March 20, 1911, carrying these items, namely, $130, $10, and $8.86, bearing the following notation in Mr. Heimrich's handwriting:

"Cr. on S. A. Hull's note ................$ 8.86
"Half of my taxes on lot ................ 55.57

$64.43"

Another slip bearing date April 16, 1911, in the sum of $120, has the following notation in Mr. Heimrich's handwriting: "Payment S. A. Hull's note," but bearing the same date. A slip for $140 has no such notation.

A slip dated July 18, 19111 (evidently intended for 1911), in the sum of $120 has the notation, "on my Hull-Hamlet note," in Mr. Hull's handwriting.

The conclusion is irresistible that the understanding of both Heimrich and Hull was that the $120 dividends should be applied on Hull's note which was held by Heimrich while the $140 dividends were not to be so applied.

On July 16, 1913, defendant, Hull, wrote a letter to defendant, Heimrich, in which, among other things, he says:

"Dear John:

"In looking over my papers and books I am sending you some information which I thought might explain the situation of the property in question and might be of some assistance to you in opening up your accounts on this property.

"First: I enclose statement of my note which Mr. Heimrich held in lieu of half the loss sustained for the settling up the Hull-Hamlet & Co.'s business and which loss was paid by him, I agreeing to stand half of same amounting to $21,945.38.

"Payments have been made as indicated thereon amounting to $623.72. As I understand it this indebtedness of mine was canceled by Mr. Heimrich in his will, and at your convenience and to keep our records complete presume you will in due course send me a receipt, as trustee of the estate, to this effect."

The statement to which reference is thus made by defendant Hull is upon stationery of the Pacific Warehouse Company, Inc., and, except for the usual formal printing of such bill heads, is in the handwriting of defendant Hull. The following is a copy thereof:

"E. C. Cardin, President　　　　　　S. A. Hull, Mgr.
　　　　　　W. W. Williams, Sec'y
　　　　　　Seattle, Wash., ..........................., 191......
Stephen A. Hull　　　　　　　　　　Hull-Hamlet
　　　　Seattle　　　　　　　　　　Note Acct.
　　　　　　John Heimrich
　　　~~To Pacific Warehouse Co., Inc., Dr.~~
　　　　　　Portland, Oregon

| | | |
|---|---|---|
| June 22, 1910 | Promissory Note | $21,945.38 |

Payments

June 28, 1910, by deposit to credit John Heimrich in First National Bank, Seattle

| | |
|---|---|
| | $ 85.00 |
| July 10, 1910 | 49.86 |
| Jan. 15, 1911 | 120.00 |
| Mar. 18, 1911 | 8.86 |
| Feb. 15, 1911 | 120.00 |
| Apr. 15, 1911 | 120.00 |
| July 17, 1911 | 120.00 |

　　　　　　　　$623.72"

It will be noted that no claim is made here that the dividends in the sum of $140 each should be credited upon said note.

On cross-examination, when asked to explain this discrepancy, Hull first said: "I really didn't charge him for the dividends on the stock which he held of mine as collateral." (P. 504, Trans. of Test.) Later, he said: "The statement must be incomplete." (P. 508, Trans. of Test.) And again, that the statement was "quickly and hurriedly made." (P. 586, Trans. of Test.)

The fact remains that one month and one week after the death of John Heimrich, in a letter to the executor written for the purpose of explaining the account, defendant Hull made no claim that any dividend in the sum of $140 should be credited upon said note.

The indebtedness evidenced by this note was forgiven in the last will and testament of said deceased. The note was returned to defendant Hull, the letter of transmittal stating that the note "is sent as fully paid and satisfied by John G. Heimrich, executor under the terms of the will of John Heimrich, now deceased." A written acknowledgment of its receipt bearing date of August 13, 1914, was made by defendant Hull in which, among other things, he said: "Your letter is in accordance with my understanding of these matters." Hull testified that he became irritated at some alleged statement of defendant Heimrich, chiding Hull with having caused a loss to the estate, and Hull thereupon destroyed the note and resolved to pay it in full. He claims that he left the 70 shares of the Pacific Warehouse Company's stock with defendant Heimrich, as trustee, in order that the dividends therefrom could be applied in payment of said note. In his first refer-

ence to the note, while testifying, he described it as a note payable on demand, and said that it had been returned in person by plaintiff at which time the alleging irritating statement, he said, was made to him by plaintiff. Defendant, Heimrich, later testified that the note was payable one year after date. Heimrich also claimed to have made a copy thereof when it was returned to Hull and that there were no endorsements upon it. The purported copy, on the back of which appeared the words "No endorsements," was received in evidence and later stricken from the record.

Some days after the foregoing testimony had been given, a further hearing was had at which defendant, Hull, presented the note itself and testified that he had found it after the former hearing; that he was confused as to the note he had actually destroyed, and that the endorsement now appearing upon the note is in the handwriting of deceased. The note is payable one year after date. There are five endorsements upon it, each in the sum of $260. There is no endorsement of $85, of $49.86, or of $8.86. The significance of these endorsements, if genuine, lies in the fact that the amount of $260 equals the dividend of $140, from the stock in question, and $120, received from the 60 shares owned by Hull. The payee would not have included the dividends from the stock in question in such endorsements, if the stock had belonged to the payee, but if he held such stock only as collateral it would be natural for him to do so. The writer is of the opinion that these endorsements are not genuine, but have been placed upon the note at one time rather than at the intervals evidenced by the respective dates thereof. The writer is unable to accept Mr. Hull's statement that, because of some remark of his brother-in-law,

the circumstances of which are too vague for him to remember with any accuracy, he revoked his acceptance of the forgiveness accorded to him in the will of deceased of an obligation in the sum of $21,945.38. Such an incident in detail would be vivid to the writer "until the sands of the desert grow cold." Besides this, there is a letter in evidence, dated August 15, 1926, written by defendant Hull to Mr. George W. Joseph, wherein he asks if Mr. Joseph will not attempt to recover the stock in question by purchase or otherwise. (P. 541, Trans. of Test.) Certainly, he would not seek an arrangement to purchase stock owned by him and merely pledged as collateral.

There is also a letter in the record, dated February 11, 1928, from defendant Hull to defendant Heimrich, dealing with the matter of proposed loans to the railroad company and the source from which the money therefor might be had. Referring therein to the corporate stock in question, defendant Hull says: "The other suggestion is the sale of your Pacific Warehouse Company stock. If this stock could be sold for forty or fifty thousand dollars, and I think I could arrange to take it at that, you would have to pay the government a tax of about sixteen to seventeen hundred dollars on the difference between $50,000 and $3,500, the amount it was originally taken in at when the assets of the estate were appraised. There would also be a surtax of about $1,800."

This part of the record discloses that in February, 1928, defendant Hull wrote to defendant Heimrich that he, Hull, thought he could arrange to take the stock of which he now claims that he, Hull, was then the owner for 40 or 50 thousand dollars. In a word, according to Hull's claim, the owner of the stock is offering the pledgee, whose rightful claim

thereto is comparatively nominal, the sum of 40 or 50 thousand dollars for the stock. This is utterly inconsistent with the ordinary course of such affairs.

From the stubs of the stock certificates, as well as from Finding No. 5, of the circuit court, it appears that these 70 shares of stock are represented by certificate No. 17, dated March 2, 1909, for one share issued to John G. Heimrich, and certificate No. 20, dated January 9, 1919, for 69 shares issued to John G. Heimrich, trustee. No notation is made on either of these stubs that the stock was issued as collateral security.

■ The writer is of the opinion that defendant Hull has failed to prove that he owns the stock in question, and we so hold.

Upon the first day of the trial of this case, in the circuit court, the widow of John Heimrich died testate. Defendant Heimrich is executor of her estate. She is not a party to this suit, and said Heimrich, in his capacity as her executor, has not been made a party hereto.

■ The circuit court made an allowance of $10,000 as a fee for plaintiff's attorneys herein. The basis of such an allowance is that through their services the funds of the trust estate have been augmented. This may also be said with respect to the services of the attorneys for defendant, Heimrich, whose diligence and vigilance have solved the issue as to the 70 shares of stock in the Pacific Northwest Warehouse company in favor of the trust estate. Because of this fact, and the further fact that plaintiff and defendant Heimrich are practically the only parties interested, we hold that no allowance whatever should be made for attorneys' fees, thus leaving that matter for determination and settlement by the parties themselves and their respective attorneys.

To summarize, we hold that of the items which in the findings of fact, conclusions of law, and decree of the circuit court were charged against defendant, Heimrich, as trustee, he is not properly chargeable with the following, except as the holder of debenture bonds of said railroad company representing the three loans to said company, to wit:

| | | |
|---|---|---|
| Executor's fee | | $10,900.05 |
| Attorneys' fee | | 2,500.00 |
| Loans to Great Southern Railroad Co.: | | |
| June 21, 1913 | $12,000 | |
| June 30, 1914 | 14,750 | |
| Dec. 30, 1914 | 6,000 | 32,750.00 |
| | | $46,150.05 |

We also hold that said trustee is not chargeable with interest upon the deposits received by him on January 15, 1929, in the sum of $2,189.22, and on November 20, 1929, in the sum of $2,186.40. These deposits were received by said trustee from Walker Brothers under circumstances justifying the trustee in withholding their investment as funds of the trust estate until he had ascertained whether the same belonged to the estate or were returns due the trustee individually. These deposits belong to and are a part of the funds of this trust estate.

We also hold that defendant Hull is not entitled to the relief demanded in his answer and cross-complaint, and that no charge should be made against defendant Heimrich in favor of said defendant Hull. In that regard, however, defendant Heimrich, as trustee, is chargeable with said 70 shares of stock in the Pacific Warehouse company as the property of the estate of John Heimrich, deceased.

We also hold that plaintiff is not entitled to an allowance of any sum as attorneys' fees herein.

Except as to the items mentioned in the foregoing summary and interest thereon, we hold that defendant Heimrich is chargeable with the funds and property of said estate, including interest at 6 per cent on loans made by said trustee from the respective dates thereof until paid, as enumerated and designated in said findings, conclusions of law and decree of said circuit court herein.

It is, therefore, hereby ordered, adjudged and decreed that said defendant, John G. Heimrich, as trustee of the estate of John Heimrich, deceased, have and recover judgment herein against said defendant, John G. Heimrich, personally, in the sum of ten thousand and no/100 dollars ($10,000.00), together with interest thereon at the rate of 6 per centum per annum from the 17th day of September, 1926; in the further sum of ten thousand and no/100 dollars ($10,000.00), together with interest thereon at the rate of 6 per centum per annum from the 24th day of September, 1926; in the further sum of ten thousand and no/100 dollars ($10,000.00), together with interest thereon at the rate of 6 per centum per annum from the 23d day of October, 1926; in the further sum of ten thousand and no/100 dollars ($10,000.00), together with interest thereon at the rate of 6 per centum per annum from the 23d day of November, 1926; in the further sum of ten thousand and no/100 dollars ($10,000.00), together with interest thereon at the rate of 6 per centum per annum from the 18th day of December, 1926; in the further sum of five thousand and no/100 dollars ($5,000.00), together with interest thereon at the rate of 6 per centum per annum, from the 31st day of March, 1927; in the further sum of eighty-eight and

no/100 dollars ($88.00), together with interest thereon at the rate of 6 per centum per annum from the 25th day of October, 1927; in the further sum of one thousand nine hundred and no/100 dollars ($1,900.00), together with interest thereon at the rate of 6 per centum per annum from the 22d day of February, 1922; in the further sum of five thousand and no/100 dollars ($5,000.00), together with interest thereon at the rate of 6 per centum per annum from the 8th day of April, 1925; in the further sum of ten thousand and no/100 dollars ($10,000.00), together with interest thereon at the rate of 6 per centum per annum from the 18th day of July, 1925; in the further sum of one thousand and no/100 dollars ($1,000.00), together with interest thereon at the rate of 6 per centum per annum from the 1st day of March, 1921; in the further sum of fifty thousand and no/100 dollars ($50,000.00), together with interest thereon at the rate of 6 per cent per annum from the 18th day of February, 1922; in the further sum of ten thousand and no/100 dollars ($10,000.00), together with interest thereon at the rate of 6 per cent per annum from the 14th day of December, 1922; in the further sum of twenty thousand and no/100 dollars ($20,000.00), together with interest thereon at the rate of 6 per centum per annum from the 15th day of July, 1925; and in the further sum of twenty thousand and no/100 dollars ($20,000.00) together with interest thereon at the rate of 6 per centum per annum from the 9th day of September, 1925.

It is ordered that within 90 days after the mandate upon this appeal has been received by the clerk of the circuit court, defendant, Heimrich, shall pay the judgment hereinabove rendered and make distribution of all the funds and property of said trust estate, except the stock and bonds of said railroad company in ac-

cordance with the terms and conditions of the last will and testament of John Heimrich, deceased, taking vouchers therefor from the respective distributees, which vouchers shall be filed with the clerk of the circuit court as part of the records and files of this case, said distribution to be made to plaintiff and to said defendant Heimrich individually, and to said defendant Heimrich in his capacity as executor of the last will and testament and estate of said Elizabeth Heimrich, deceased; and in case that, in any respect, said distributees cannot agree upon the manner of said distribution, then the matter should be determined by the court.

That the foregoing judgment is hereby declared and decreed to be and the same is and constitutes a lien in favor of said trust estate of John Heimrich, deceased, upon the right, title and interest of said defendant John G. Heimrich in and to said trust estate. That said judgment is also hereby declared and decreed to be and the same is and constitutes a lien upon all the right, title and interest of the said John G. Heimrich in and to the Great Southern Railroad company and upon all the corporate stock and bonds of said railroad company owned by John G. Heimrich at the time of the institution of this suit, said lien thereon being in the amount of said loans made to said railroad company by said trustee and interest thereon, namely: $10,000, with interest thereon at the rate of 6 per centum per annum from the 17th day of September, 1926; the further sum of $10,000, with interest thereon at the rate of 6 per centum per annum from the 24th day of September, 1926; the further sum of $10,000, with interest thereon at the rate of 6 per centum per annum from the 23d day of October, 1926;

the further sum of $10,000, with interest thereon at the rate of 6 per centum per annum from the 23d day of November, 1926; the further sum of $10,000, with interest thereon at the rate of 6 per centum per annum from the 18th day of December, 1926; the further sum of $5,000, with interest thereon at the rate of 6 per centum per annum from the 31st day of March, 1927; and the further sum of $88, with interest thereon at the rate of 6 per centum per annum from the 25th day of October, 1927. That said judgment is also hereby declared and decreed to be and the same is and constitutes a lien upon all the right, title and interest of the said John G. Heimrich in and to the Wasco Pine Box and Lumber company, and upon the corporate stock of said Wasco Pine Box and Lumber company owned by said defendant John G. Heimrich at the time of the institution of this suit, said lien thereon being in the amount of said loans made to said Wasco Pine Box and Lumber company and its predecessor in interest, said Manchester Box and Lumber company, namely: in the sum of $1,900, with interest thereon at the rate of 6 per centum per annum from the 22d day of February, 1922; in the further sum of $5,000, with interest thereon at the rate of 6 per centum per annum from the 8th day of April, 1925; in the further sum of $10,000, with interest thereon at the rate of 6 per centum per annum from the 18th day of July, 1925; in the further sum of $1,000, with interest thereon at the rate of 6 per centum per annum from the 1st day of March, 1921; in the further sum of $50,000, with interest thereon at the rate of 6 per centum per annum from the 18th day of February, 1922; in the further sum of $10,000, with interest thereon at the rate of 6 per centum per annum from the 14th day of December, 1922; in the further sum of

$20,000, with interest thereon at the rate of 6 per centum per annum from the 15th day of July, 1925; and in the further sum of $20,000, with interest thereon at the rate of 6 per centum per annum from the 9th day of September, 1925. That in case of the failure of the said defendant John G. Heimrich to make payment of the respective amounts for which the foregoing liens are hereby impressed upon the above-mentioned properties respectively, within the time hereinbefore prescribed, said properties may be sold, as by law upon execution, and the proceeds derived therefrom shall be applied first to the payment of the costs and expenses of said sale, second to the payment to plaintiff of the unpaid portion of her distributive share of said trust estates, both in her capacity as beneficiary under the last will and testament of her father the said John Heimrich, deceased, and in her capacity as heir at law and beneficiary under the terms of the last will and testament of her mother Elizabeth Heimrich, deceased, and the overplus, if any there be, shall be paid to said defendant, John G. Heimrich, as his interest may appear. That the assets, having any value, belonging to said trust estate, which are to be distributed by the trustee thereof within the time above indicated, are as follows:

N½ of the NW¼ of the NW¼ of the NE¼ of the NW¼ of Section 7, Twp. 23 North, Range 4 East, containing 5 acres in King County, Washington _____$      500.00

An undivided half interest in Lot 17, Block 101, Gilman's Addition to the city of Seattle _____      100.00

4 shares of the capital stock of the Mount Vernon Water Company, par value $25.00 each (Washington Corporation) __      100.00

Certified check for dividends from mining stock received January 15, 1929, from Walker Brothers, Bankers of Salt Lake City, Utah as aforesaid ................................$ 2,184.22

Certified check for dividends received November 20, 1929, from said Walker Brothers, Bankers, as aforesaid ................ 2,186.40

Balance cash on hand ............................................ .83

70 shares Pacific Warehouse Company of the par value of $200 each ........................... 14,000.00

Principal sum of judgment against defendant, Heimrich, rendered herein .................. 172,988.00

Interest thereon to November 1, 1931 ........... 73,278.49

$265,337.94

It is further ordered that until said defendant Heimrich pays said judgment and complies with the foregoing order, he, the said Heimrich is hereby restrained personally and as trustee from in anywise selling, mortgaging, encumbering, conveying, assigning, or in any manner disposing of or impairing said trust estate, or any part thereof, except as herein and by the decree of the circuit court or the further order of said court provided.

In case said defendant, Heimrich, fails to pay said judgment or to comply with the foregoing order requiring distribution by him of the funds and property of said trust estate within the time above designated, or such further time as may be granted by the circuit court, then said Heimrich should be removed as trustee aforesaid, and another trustee should be appointed to enforce the collection of said judgment, effect the distribution contemplated herein, and to administer upon the railroad company securities in accordance with the provisions of said will.

The decree of the circuit court is modified, as above stated, and, as so modified, said decree is affirmed. It is ordered that the defendant Heimrich recover costs and disbursements on this appeal from plaintiff and defendant Hull.

BEAN, C. J., RAND and ROSSMAN, JJ., concur.

Petition for rehearing denied December 8, 1931

ON PETITION FOR REHEARING
(6 P. (2d) 41)

KELLY, J. The three parties litigant herein have filed petitions for rehearing. These petitions, and the briefs supporting them, merit and have received careful consideration on the part of the court.

The plaintiff urges that her brother should be summarily removed as trustee; that a judgment should be awarded to her against her brother for her share of the deceased mother's interest in the trust estate as well as for her own interest therein, and that this judgment should constitute a first lien upon all of the brother's property.

The defendant, Hull, reasserts that he is entitled to the seventy shares of corporate stock in the Pacific Warehouse Company.

The defendant, Heimrich, again urges that he was authorized by the terms of his father's will to make the loans which, in our original opinion, we held were unauthorized. Defendant Heimrich also again asks for an allowance of an attorney's fee.

As to the removal of the defendant Heimrich we think that, first, he should have an opportunity to comply with the decree of this court by discharging the

judgment rendered against him and distributing the other assets of the estate as ordered. In this connection, we expressly hold that, in addition to the distribution ordered, based upon appropriate and sufficient supplemental showing in support thereof, the circuit court may require distribution of any property of the estate not referred to in the original opinion as having value.

■ We further hold that no restriction is to be implied by reason of which the circuit court is to be deterred or prevented, upon appropriate and sufficient supplemental showing, from requiring other persons, than plaintiff and defendants, and, particularly, the executor of the estate of Elizabeth Heimrich, deceased, to be made parties thereto, to the end that their rights and interests, if any, in said trust estate may be determined and adjudicated.

The trustee should reimburse the estate as decreed; but it would be inconsistent with the spirit of equity and fair dealing to withhold from him a reasonable opportunity to comply with the order of the court before removing him as trustee and subjecting his property to sale upon execution.

We are unable to accept the testimony of defendant Hull as sufficient to establish his claim to the seventy shares of corporate stock mentioned. That issue has been carefully analyzed and our conclusions are as stated in the original opinion.

The brief of defendant Heimrich, in support of his motion for rehearing, fails to convince us that there was any authority given to the trustee to make the loans for which he claims credit. He cites *Ranzau v. Davis*, 85 Or. 26 (165 P. 1180). There, the directions given by the settlor, when he attempted to make the gift, were oral. His acts, which the court construed to

speak with greater clarity than his words, afforded concrete examples of the manner in which the trustee should use the property. These acts consisted of the purchase of a home in Grants Pass for his son and his wife and also a loan to pay the hop pickers.

In that case Mr. Justice (now chief justice) HENRY J. BEAN, speaking for the court, says:

"It is a general rule that the disbursements that would be allowed a trustee would depend very much upon the character of the trust and the directions given by the instrument of trust."

As the writer construes the doctrine of that case, it does not extend the principle of implied authority of a trustee to cases where there is an instrument in writing definitely and expressly stating the terms of the trust.

The trustee urges that by waiting until the expiration of the term of his trust with respect to the general property of the estate as distinguished from the railroad property, before instituting proceedings for an accounting, plaintiff lulled him into a sense of believing that his management of the trust funds met with her approval. We are unable to draw such a conclusion from the record. To us it indicates that the trustee was not influenced at all by that circumstance. The plaintiff testified that at one time her brother, the trustee, told her that the railroad property was worth a million and a half dollars. She also testified that for her to have sought to obtain from the trustees more definite and specific information as to the true condition of the estate would have caused unpleasantness, and that plaintiff believed that she had to wait until the expiration of the stated term of fifteen years before asserting any right over the property of the estate.

Where the trustee makes an improper investment of the trust fund, in order to relieve him from liability therefor, because of the acquiescence of the cestui que trust, such acquiescence must be with full knowledge of the facts and circumstances and with knowledge of the legal rights of the cestui que trust: 39 Cyc. 414, note 52, and cases there cited.

The circumstances of the delivery by defendant Heimrich to his sister, the plaintiff, of the certificate of stock in the lumber company and its return by plaintiff to said defendant lead us to the conclusion that at most this was but an attempt on the trustee's part to make a distribution to plaintiff of part of the alleged but not actual assets of the estate, and that upon their true nature becoming known to plaintiff she refused to acquiesce in such attempted distribution.

We are impressed with the justice of the plea, and we hold that the trustee should have an opportunity to show that a distribution of the lumber company's corporate stock was accepted from the trustee by his mother as a portion of her distributive share of the trust estate, if, in fact, such a distribution was so made and accepted. If such a showing is made and the court so finds, it should enter an order of payment and satisfaction pro tanto upon the judgment entered herein. To support such a proceeding, the executor of the mother's estate should be made a party to this suit, and appropriate supplemental pleadings filed.

It is ordered that all of the petitions for rehearing be denied and that this cause be remanded for further proceedings not inconsistent with the holdings of this court as herein and in the original opinion set forth.

Petitions for rehearing denied; decree modified and affirmed, and the cause remanded with instructions.

BEAN, C. J., RAND and ROSSMAN, JJ., concur.