**JOHNSON v. JACKSON.**

Civ. No. 7457.

United States District Court E. D. Pennsylvania.

Jan. 28, 1949.

Phillips & Phillips, of Philadelphia, Pa., for plaintiff.

Peter P. Zion, of Philadelphia, Pa., for defendant.

KIRKPATRICK, Chief Judge.

In September or October, 1944, the plaintiff and the defendant entered into a partnership agreement the purpose of which was to make and sell a device, intended to be installed in ambulances, for producing anesthesia by mechanical refrigeration. At that time the defendant had pending an application for a patent (which issued March 21, 1945) and had spent something like $2,000 upon it, over a period of several years.

The agreement was that the plaintiff, who had certain contacts with government agencies, would devote his entire time to developing a market with the government and in assisting, so far as he could, the work of perfecting the device and making it commercially profitable. Until such time as they were ready to go into production, the defendant was to continue to put up all the money needed for development, but from that point on, the plaintiff and the defendant were to pay the expenses of the business equally and share equally in whatever profits might be realized. As to these terms, the testimony of the two parties is in agreement.

The question whether the patent itself, as distinguished from the profits arising from manufacture under it, became a partnership asset is in dispute. The plaintiff understood that it did, the defendant on the other hand testified that he was to keep the title to the patent, that he never agreed to give the plaintiff any interest in it—"only what we would obtain from the patent".

In pursuance of the agreement, the plaintiff went to Washington in October, 1944, where he apparently created some interest on the part of the government in the device, predicated, however, upon putting a pilot model in the hands of the War Production Board before any orders for it could be obtained.

At this point both parties believed themselves ready for the commencement of production and the plaintiff for the partnership, began to look for a building, finally located one, and arranged for the purchase of it in July of 1945. From October, 1944, until July, 1945, the defendant continued to pay the expenses of development which consisted of work upon the pilot model. The amount of these expenses does not appear definitely but they were probably not large as there was much difficulty in obtaining materials and parts; and as a matter of fact no model was ever completed.

The contract for the purchase of the building was made in July, 1945, and the property was deeded to the two partners on October 30, 1945, for $3,000. Both sides agree that the building at the time of its purchase was partnership property.

The building having been purchased in anticipation of and for the purpose of going into production of the device, the defendant, under the partnership agreement was obligated to contribute half the cost. He did not do so however. The seller took a mortgage of $2,000 and the plaintiff paid the additional $1,000 in cash as well as all settlement costs. Beginning in the latter part of the summer of 1945, alterations were made upon the property, all of which were paid for by the plaintiff, the cost being more than $1,500 and less than $4,000.

It having become evident with the end of the war and the difficulties in obtaining materials that commercial operations would not be possible for a long time, the plaintiff and the defendant, sometime between October, 1945, and March, 1946, agreed that the building be sold; but before anything was done the plaintiff left to take a position in Los Angeles where he remained. All relevant communication between the parties after March, 1945, was by letter.[1]

The property was placed for sale in the hands of an agent (Taylor and Son, realtors) who obtained a purchaser for the property at $7,000. A deed was prepared and executed by both the plaintiff and the defendant and settlement was made, through the agent (Taylor), on October 17, 1946. Part of the proceeds were used to satisfy the bond and mortgage and to pay costs incidental to the sale leaving a balance above said expenses of $4,567.45. Three

---

[1] The defendant testified that all negotiations looking toward the dissolution of the partnership took place by mail and that there was no oral discussion. However, a reading of the letters leads to the conclusion that there must have been some conversation about the subject matter before the plaintiff left for California.

checks totaling this amount were delivered to the defendant.

At this point the present difficulty began to develop. It did not, however, arise from any question as to the proceeds of the sale. Both parties were, and still are, in agreement that the understanding was that the whole amount belongs to the plaintiff.

The disagreement has to do entirely with the ownership of the patent; and the way in which it has given rise to this lawsuit is that the defendant has refused to indorse the checks or deposit them to the plaintiff's account unless and until the plaintiff gives him a written renunciation of all interest in the patent. His position is that the sale of the property was only half of the agreement dissolving the partnership, the other half being his retention of the patent as his exclusive property. His testimony on the point was: "That was the way I thought to wash up the partnership; he to go his way, and I to go mine.

"Q. In other words, he was to take back what he put up, and you were to take back what you put up? A. That is right, leaving me free to promote the patent at some future date."[2]

The plaintiff's position is that the sale of the building was an entirely separate transaction intended to reimburse him for the money which he had put into that specific property, of which the defendant had been obligated to contribute one half, and that it was not intended to affect any other rights or liabilities of the partners. He says that he was and still is a half owner of the patent by virtue of the original partnership agreement.[3]

It does not seem necessary in this proceeding to determine the ownership of the patent. Obviously, if the plaintiff is right about it, the defendant cannot withhold the checks, which he concedes belong to the plaintiff, in order to force the plaintiff to surrender his interest in the patent. If the defendant is right, he does not need a renunciation or release from the plaintiff and, by analogy to rules governing tender. See Hepburn & Dundas v. Auld, 1 Cranch 321, 5 U. S. 321, 2 L.Ed. 122 he cannot demand it as a condition of paying over money he owes.

■ Although the general rule is that one partner cannot maintain an action at law against another based upon partnership transactions, it is a well established exception that, where a single partnership venture or item of account, by express agreement of the partners, has been segregated from other partnership ventures or items of account so as to be taken out of the general partnership account, an action at law may be maintained by one partner against the other, to settle their rights in the transaction, even though there be other unadjusted items not segregated. See Lippincott v. Low, 68 Pa. 314, and decisions collected in 21 A.L.R. 62; 58 A.L.R. 627; 168 A.L.R. 1100. Of course, if an action at law will lie a suit in equity can also be maintained.

■ I find it to be a fact that the

---

[2] It is a little difficult to picture an arrangement in which an interest was given in the proceeds of a patent but no interest in the patent itself. It would seem that a half interest in the proceeds must imply some interest in the patent, otherwise the defendant would be in a position to appropriate or destroy the main asset of the partnership and all interest of his partner in it at any time.

[3] The defendant's position as stated by him does not square very well with his earlier testimony to the effect that the patent did not become a firm asset under the original agreement. He says he was to take back what he "put up" but he also says that he did not "put up" the patent.

It is significant that none of the defendant's letters, prior to December 11, 1946, mention the patent and that in that letter his demand comes together with a request for an affidavit from the plaintiff as to certain facts in connection with a lawsuit in which the defendant felt that "we could use your help." In his first letter (May 28, 1946) he insists upon a release from the bond given by the two partners in connection with the mortgage. His next request or demand was for an affidavit by the plaintiff to the effect that he (the defendant) had no interest in the proceeds of the sale for use by the defendant in connection with his income tax return. In other words, it would seem that it was some considerable time after the consummation of the sale and the settlement of all details that the defendant thought of the patent.

plaintiff and the defendant agreed to entirely withdraw and segregate the item of the adjustment of their interests in the building from the partnership business and the partnership accounting.

The principal relief asked for by the plaintiff, namely, that the defendant be decreed to hold the checks in trust for the plaintiff and be ordered to indorse them, is properly demandable under the facts proved. In Peoples-Pittsburgh Trust Co. v. Saupp, 320 Pa. 138, 182 A. 376, 378, 103 A. L.R. 844, a somewhat similar situation was presented although no partnership was involved. The defendant held and refused to deliver stock certificates representing a stock dividend to which the plaintiff as pledgee of the original stock was entitled. The Court said: "Implied trusts arise by implication of law 'because morality, justice, conscience and fair dealing demand that the relation be established.' Dixon v. Dixon, 123 Me. 470, 124 A. 198, 199. In Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 122 N.E. 378, 380, the New York Court of Appeals, speaking through Mr. Justice Cardozo, said: 'A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee.' Courts act upon the same logic in implying a trust."

Of course, the defendant here is not attempting to assert or retain for himself any beneficial interest in the checks. However, in order to obtain his own ends he is depriving the plaintiff of his beneficial interest, which amounts to the same thing.

 In the alternative, the plaintiff is entitled to a money judgment. The fact that he has not specifically asked for it in his complaint is immaterial. Even his prayer for general relief did not cover it. Federal Rules of Civil Procedure, rule 54 (c), 28 U.S.C.A., provides that "* * * every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." See Moore, Federal Practice, Section 54.03, and cases cited. If the pleading states a cause of action for relief, the designation of the cause and the prayer for relief, although some indication of the nature of the cause, are not controlling and the appropriate relief under the facts pleaded, will be granted. Kansas City, St. L. & C. R. Co. v. Alton R. Co., 7 Cir., 124 F.2d 780.

 In the absence of the proved intention to delay or defraud creditors, there is no legal objection to a transfer of partnership property from the firm to one of the partners. Am.Jur., Partnership, 420. No such intention appears in the present case. The only debt of the firm mentioned in the testimony is a claim in the amount of some $1,400 for the recovery of which a subcontractor is now suing, not the firm, but Smith, who contracted with the defendant. The defendant in his letter of December 11, referring to this claim, says "In any event, whatever the outcome is, I will personally have to make settlement." Referring to the subject matter of the suit, he testified "I got Smith (the contractor) to build the box for me." True, under leading questions from his counsel, he testified that it was a debt of the partnership, but this unsupported legal conclusion is wholly insufficient to establish it as such in this proceeding. Even so, there is nothing to show that it would make the partnership insolvent, and even if there were, the question of fraud upon creditors can hardly be raised in this case by one of the parties to the transfer.

The statements of fact and law in the foregoing opinion may be taken as the Court's findings and conclusions under the rule.

I affirm the plaintiff's 1st, 2nd and 4th requests for conclusions of law and deny the 3rd request.

I affirm the defendant's 2nd request for conclusion of law and deny his 3rd, 5th, 6th and 7th requests. The 1st request is for a fact finding and has been covered. The 4th request is not answered as immaterial.

A form of judgment may be presented.