Argued May 3, remanded with instructions September 30, 1976

# GORGER et al, *Respondents,*
## *v.*
# GORGER et al, *Appellants.*

555 P2d 1

[ 268-a ]

[ 268-b ]

*Robert W. Collins,* Pendleton, argued the cause and filed the briefs for Leo Gorger and Edna Gorger.

*George L. Hibbard,* of Hibbard, Caldwell, Canning, Bowerman & Schultz, Oregon City, argued the cause and filed the brief for Leola J. Bowerman, Robert J. Gorger, personally and as co-trustee pendente lite, Richard A. Gorger, Jeffrey Joseph Gorger and Jody Kay Gorger, minors, by Robert Gorger, Guardian ad litem, Nancy Gorger, Molly Gorger, W. Morris Bowerman.

*Robert J. Johnston,* Portland, argued the cause for respondents. With him on the brief were William E. Hurley, of Bernard, Hurley, Hodges & Kneeland, Portland.

Before O'Connell, Chief Justice,* and McAllister, Denecke,** Tongue and Bryson, Justices.

TONGUE, J.

*O'Connell, Chief Justice, when the case was argued.
**Denecke, Chief Justice, currently.

**TONGUE, J.**

This is a suit in equity by two of the five principal beneficiaries of a testamentary trust under their mother's will to remove their father as trustee; to surcharge him for amounts claimed due as the result of his alleged misconduct as trustee; to determine title to a wheat ranch in Morrow County and require him to convey it to the trust; to cancel various investments of trust funds made by him; to dissolve the business operation conducted by him and distribute its assets, and to require a "full trust accounting."

Defendants appeal from an adverse decree awarding most of the relief prayed for, including a conveyance of Leo Gorger's interest in the ranch and a judgment against him, or charges against his account, for various items totaling over $100,000. For reasons stated in this opinion, we hold that the trial court erred in various provisions of that judgment and decree.

To better understand the issues to be decided a brief summary of background facts may be helpful.

*Background facts.*

Defendant Leo Gorger has been a wheat rancher since 1915. He and his wife, Ruth Gorger, were married in 1934. They gradually accumulated extensive properties, including a wheat ranch in Morrow County, one in Umatilla County and other properties purchased with the profits from their ranch operations.

Ruth Gorger died on August 21, 1961, leaving most of the assets of her estate (appraised at $468,295.71) in trust for the benefit of their five children, with her husband Leo and his brother Henry as trustees. Henry took no active part in management of the trust. Leo continued active management of the ranches and the investment program. He maintained no separate trust bank account, but records were maintained by an accountant in a manner characterized as "in accordance with Eastern Oregon farming practices."

[ 269 ]

Since 1961 the trust assets have substantially increased. From 1962 to 1973, inclusive, each of the five children has recieved in cash or credits over $73,000. None of them is actively engaged in the operation of the ranches.

Over the years since 1961, however, and particularly since the remarriage of his father, Donald Gorger, the oldest son, became increasingly distrustful of his father. As the culmination of several years of increasing acrimony, he and his sister Patricia Forsythe and their families filed this suit. The remaining three children remained loyal to their father and were joined as defendants, together with their families.[1]

1. *Title to the Ione ranch.*

One of the principal questions to be decided is whether, upon the death of Ruth Gorger, the title to the Ione ranch in Morrow County was held by Leo and Ruth Gorger in an estate by the entireties (except for the interests previously deeded to the children as gifts), or whether the title to that ranch was then held by Leo and Ruth Gorger as tenants in common. If held by the entireties, title vested in Leo Gorger as the survivor. If held as tenants in common, the interest of Ruth Gorger should have gone into the trust for the benefit of her children.

The following Findings of Fact were made by the trial court, among others:

> "The court finds that Ruth J. Gorger and Leo Gorger, consonant with their written acknowledgement in Ex. 83 [a "history" of their "farming career"] was owned by them as tenants in common and not as tenants by the entirety. Accordingly the court finds that this property was part of the Ruth J. Gorger trust estate, to the extent of one-half, with the remaining one-half being owned by defendant Leo Gorger.

---

[1] Also named as defendants were Henry Gorger, The Dalles Tapadera, Inc., and Lewiston Tapadera, Inc.

References in this opinion to "defendants" are intended as references to defendants Leo and Edna Gorger and those children and their families named as defendants and who are appellants on this appeal.

"These properties were included in the Leo Gorger Ranches Partnership and in the balance sheet at year-end preceding death of Mrs. Gorger. It was removed from probate estate assets by some incomprehensible maneuvering expressed in the adjusting entries and notes of Mr. Gorger's accountant, Exhibits 84 to 93.

"In Ex. 129, the deed by which the Gorgers took title to the Pendleton Ranch, there is expressed entirety ownership. Yet in all the dealings of the partners since that land was acquired it was partnership property, and was included in the probate of partnership assets. The court recognizes no sanctionable difference between the handling of the Pendleton real estate and the the Morrow County real estate [Ione ranch].

"The court is not unaware of some letters presented as written by attorney Raley for Mr. and Mrs. Gorger. While these documents cannot be reconciled to the determination of the court, they are not without question, particularly when considered with the accountant's notes and memos above referred to. Accountant Dickey, who had reviewed all of the accountant's records for the period, stated had the accountant been instructed the property was not partnership property this would have been reflected in the accountant's files and that it was not. In reviewing the accountant's notes it is apparent the accountant did not have any knowledge of ownership other than as partnership property at the time of death of Mrs. Gorger. The court is of the opinion that the accountant was instructed to make entries removing the property from the partnership during the probate period."

Defendants contend that these findings are in error. In order to resolve this question it is necessary to review the evidence on this subject.

—*The facts relating to Ione ranch.*

*1934.* According to a "history" of his "farming career," as prepared by Leo Gorger in 1956, at the suggestion of his attorney, for use for the purposes of estate planning:

"In November, 1934, I was married to Ruth J. Adkins and we agreed to continue to farm and try to put up more improvements on the land with Ruth to have a one-half

interest in everything I had or thereafter acquired, as a full partner, with deeds to be made for her one-half interest. All property thereafter contracted for was put in her name too. The formal partnership agreement was delayed until 1944, at which time she was deeded a one-half interest in the property I owned before marriage. The word 'entireties' was inadvertently used in the deed. * * *"

On trial Leo Gorger testified that the last sentence was added at that time in 1956 at the suggestion of his attorney, Mr. James H. Raley of Pendleton (who died prior to the trial of this case) and that he was not then aware of the meaning of the term "entireties."[2]

*1944.* A written partnership agreement, as prepared by a Hermiston attorney, was signed by Mr. and Mrs. Gorger and recited, among other things, that they were to "remain partners in the business of farming" and that:

"IT IS FURTHER AGREED AND UNDERSTOOD by and between the said Leo Gorger and Ruth J. Gorger that *the said partnership hereto will create an estate by entirety of all the real property* now owned or hereafter owned by either of the said partners, and that during the life of this partnership, the said partnership will conduct general farming operations in Morrow County, Oregon; and that *each partner of this agreement shall own a fifty (50) percent interest in all of the properties* now owned or hereafter acquired in the said partnership; and the profits, if any, made in the said partnership shall be divided on an equal basis." (Emphasis added)

*1954.* Leo and Ruth Gorger, having previously moved to the Pendleton ranch, leased the Ione ranch for operation to one John Proudfoot.

*1955.* Ruth Gorger excuted a will on May 2, 1955,

---

[2]That "history" also stated that:

"* * * All land contracted to be purchased after our marriage was deeded to us in both names and then this understanding was formalized in 1944 by the partnership agreement and the deed to Ruth of an undivided one-half interest to create in the partnership the owner of the property. The language 'entireties' was inadvertently used in said deed and was erroneous."

[ 272 ]

prepared by a Portland lawyer, in which she left most of her estate in the trust for her children which is now the subject of this case.

*1956.* Mr. and Mrs. Gorger consulted Mr. Raley, for the purpose of estate planning. For that purpose and at his suggestion the "history" of the farming operations was prepared. At that time titles to both the Ione ranch and the Pendleton ranch were held in estates by the entireties. The following things were then done, apparently upon the advice of Mr. Raley:

(a) On December 21, 1956, a new partnership agreement was signed by Mr. and Mrs. Gorger. That agreement recited that they had been previously conducting business under the terms of the 1944 partnership agreement, a copy of which was attached, and that they desired to continue said partnership and change its name to "Leo Gorger Ranches." The agreement went on to provide, among other things, that

> "The capital of the partnership shall consist of the amount shown on the balance sheet of the partnership business as of January 1, 1957. The capital contributions of each partner shall consist of the capital invested by each partner as shown in said balance sheet."

That balance sheet, and all subsequent partnership balance sheets prior to the death of Mrs. Gorger in 1961, listed both the Pendleton ranch and the Ione ranch as "fixed assets" of the partnership.

(b) On December 27, 1956, a lease of the Ione ranch was executed by Leo and Ruth Gorger, as lessors, to Leo Gorger, as lessee until 1971. The purpose of the lease was to give him control of the ranch in anticipation of undertaking a gift program, as next described.

(c) A gift program was then undertaken, under which deeds were executed by Leo and Ruth Gorger each year, beginning with deeds dated December 28, 1956, conveying to each of their five children an undivided fractional interest in the Ione ranch.

*1959.* By letter dated February 18, 1959 (unless actually written at a later date and "predated," as

apparently contended by plaintiffs and believed by the trial court), Mr. Raley wrote to Leo and Ruth Gorger as his clients, stating that:

"I have been going through the file with the intention of setting our theory forth as far as gift taxes are concerned. You have treated the partnership as an equal partnership over the years. Partnership laws and gift tax laws don't always exactly dovetail. Due to the use of the word 'entireties' in the early partnership agreement and due to the fact that you held most of the Morrow County property by the entireties, *we decided that we had to take the position that the land was held by the entireties* and, therefore, Mrs. Gorger had a greater interest in each piece of land. *The giving program was worked out on this basis.*

"*It seems to me, therefore, that the title to the land is not in the partnership, but is in Leo and Ruth as tenants by the entirety.* They then leased the land apparently orally to the partnership known as 'Leo Gorger Ranches' and formerly known as Ruth and Leo Gorger, Partners. Leo Gorger then subleases to Proudfoot or whoever he elects from time to time.

"It seems that the foregoing theory of ownership leasing and subleasing is the one that we will have to follow in connection with our gift tax program and the program of the land ownership.

"\* \* \* \* \*

"Think this over and if it doesn't seem correct or logical, we will want to discuss it further and then make a further written memorial of it correcting this one if this one is incorrect in any aspect." (Emphasis added)

Two days later, by letter dated February 20, 1959 (unless also written at a later date), Mr. Raley instructed their accountant, Mrs. Cosper, that the Ione ranch should be treated and considered as individually owned by Leo and Ruth Gorger, as tenants by the entireties, and as leased to the partnership, stating that:

"The Gorgers have asked me to send you the following information. *The Morrow County property is owned by Ruth J. and Leo Gorger, as tenants by the entirety,* excepting for such amounts thereof as have been given to

their children by gift deeds. *This property is all under lease to the partnership* known as Leo Gorger Ranches. This lease ends September 1, 1971. * * *

"* * * * *

"The gift tax divisions and the inheritance and estate tax divisions of the various taxing agencies will doubtless watch rather closely to see that the legal theories of ownership and tenancy are substantially followed in income tax reporting. While you have not had this information beforehand, you may desire to make some changes in the way you are reporting the income of the various persons and entities." (Emphasis added)

Mrs. Cosper, however, continued to handle the partnership accounts on the same basis as in past years and to prepare balance sheets including both the Ione ranch and the Pendleton ranch as "fixed assets."

Five days later, on February 25, 1959, apparently as the "written memorial" of their intent to proceed upon the basis recommended by their attorney, Leo and Ruth Gorger executed a lease of the Ione ranch "as the owners of the hereinafter described property as tenants by the entirety," to themselves as "partners" doing business as Leo Gorger Ranches, as the tenant. That lease also recited that this was a continuation of the same arrangement as originally agreed upon, including their original agreement that "they would hold all real property as tenants by the entirety." This lease was predated so as to take effect as of December 27, 1956, the date when the gift program to the children was undertaken.

That lease bears a certificate by the county clerk of Morrow County that it was "received and filed of record on the 29th day of June, *1959*" and was then "duly recorded."

On March 17, 1959, the tax returns for the annual gift deeds to the children of fractional interests in the Ione ranch not only noted that it was held "by the entireties" (as also in tax returns for previous gift deeds), but were more consistent with ownership by the entireties. Thus, the interest of each spouse was

recited in terms of his or her respective life expectancy. Leo Gorger's interest was stated as .31693 "at age 61" and Ruth Gorger's interest was stated as .68307 "at age 46." The tax returns for previous gift deeds had stated that the gifts were "considered as having been made one-half by each." This new practice was also followed in the tax returns for gift deeds for subsequent years.

*1960.* The partnership financial statements for 1960, however, as prepared by Mrs. Cosper, continued to list the Ione ranch, as well as the Pendleton ranch, as a "fixed asset," subject to depreciation on partnership tax returns.

*1961.* Ruth Gorger died on August 21, 1961. The probate of her estate was then commenced by Leo Gorger, as executor of her will. The inventory filed in that estate did not list the Ione ranch as an asset of the estate, but included the Pendleton ranch which was also held under an entirety deed. An inventory for inheritance tax purposes listed the Ione ranch as survivorship property passing to Leo Gorger. The balance sheet for the partnership, as of December 31, 1961, also did not include the Ione ranch as a "fixed asset." Leo Gorger testified that he left to his attorney, Mr. Raley, the decision whether the Ione ranch should go into the estate as an asset of the estate or be considered as entirety property.

*1962.* Leo Gorger executed further gift deeds of fractional undivided interests in the Ione ranch to his children for the years 1962 and 1963.

*1966.* Leo Gorger, having been remarried, executed a deed, joined in by his wife Edna, conveying to the trust an undivided one-half interest in the *Pendleton* ranch.[3]

---

[3]The explanation by Leo Gorger for that deed, as stated in a letter dated September 14, 1973, to his son, Donald Gorger, was as follows:

"In regard to the Pendleton farm I would like to set you straight about the Trust gift of that ranch.

*—The Ione ranch was held in an estate by the entireties and became the property of Leo Gorger upon the death of his wife.*

It appears from the Findings of Fact by the trial judge, as previously set forth, that his decision on this subject was based upon his findings: (1) that prior to the death of Ruth Gorger title to both the Ione ranch and the Pendleton ranch had been "contributed" to the partnership, so as to change the title in those properties from an estate by the entireties to an estate in common; (2) that no withdrawal of the Ione ranch from the partnership was made during the lifetime of Ruth Gorger, but only "during the probate period"; and (3) that the letter by Mr. Raley with instructions to Mrs. Cosper, accountant for the partnership, dated February 20, 1959, "cannot be reconciled" with these holdings, but that this letter was "not without question," based upon the apparent finding by him that if such a letter had been written and delivered to the accountant on or about that date it would have been found by plaintiffs' witness, Mr. Dickey, who had "reviewed all the accountant's records for the period" and did not find that letter among such records.

"When your mother & I acquired the title to the Pendleton ranch the deed was made to your mother and myself as husband & wife. This meant that when one of us passed on that the survivor would own the whole. This is what is known as tenants by the entirety. When your mother passed on I made the election to declare the Pendleton farm partnership property. The election was made by me after your mother's death so that all of my estate would not pass upon my death.

"The main benefit was to decrease the amount of the death taxes that would be due at the time of my death. The plan was accepted by the taxing authorities and I am sure that you can understand that it was for the benefit of you children.

"After Edna & I were married I explained the situation to her and she joined with me in the execution of a deed transferring to the trust an undivided one-half interest in the Pendleton farm. This was done intentially by Edna and myself so that there would be no question but that the Pendleton ranch belonged one-half to the trust. Had this not been done by Edna and myself the title of this land for the Pendleton farm would have been in my name only and not in the name of myself and the trust. It would have been disposed of under the terms of my will when I passed on. I feel that you should understand that I made this gift to you by having made this election after your mother's death. * * *"

In contending that the trial court did not err in these findings, plaintiffs point out that: (1) Leo Gorger admitted that the word "entireties" was "inadvertently used" in the deeds by which he and his wife took title to their property; (2) the 1956 partnership agreement defined assets of the partnership as those included in its balance sheet; (3) the Ione ranch was included in the partnership balance sheet at the end of 1960; (4) a contribution may be made to the capital of a partnership regardless of where "the muniment of title" may lie; (5) the 1959 lease did not withdraw the Ione ranch from the partnership; and (6) when Mrs. Gorger died, the partnership interest in the Ione ranch was not subject to subsequent "unilateral withdrawal" by Leo Gorger, "as was done."

We agree with these findings and contentions to the extent that we believe that in the absence of the letters by Mr. Raley in 1959 and the 1959 lease the preponderance of the evidence would require a finding that the Ione ranch had been "contributed" to the partnership and was not "withdrawn" from it prior to the death of Ruth Gorger. We also believe, however, as recognized by the trial court, that those letters and that lease are not only inconsistent with such findings, but that unless they were not only "questionable," as found by the trial court, but fraudulent, they require a finding that in 1959, prior to Ruth Gorger's death in 1961, Leo and Ruth Gorger intended to and did withdraw the Ione ranch from the partnership and that they then intended that it be held in an estate by the entireties, in accordance with the provisions of the previous deeds.

The Uniform Partnership Act provides (ORS 68.130) that:

"(1) All property originally brought into the partnership stock or subsequently acquired by purchase or otherwise, on account of the partnership is partnership property.

"(2) Unless the contrary intention appears, property acquired with partnership funds is partnership property * * *."

[ 278 ]

■ The courts are in substantial agreement with the proposition that the intention of the parties governs in determining what constitutes partnership property. Annot., 45 ALR2d 1012 (1956). Our previous decisions are in accord: *Minter v. Minter,* 80 Or 369, 375, 157 P 157 (1916), and *Merchant v. Smith-Powers Logging Co.,* 91 Or 442, 447, 178 P 939 (1919).

■ Conversely, this court has recognized that the fact that property is used for partnership purposes is not conclusive evidence that it is partnership property. *Fenton v. State Ind. Acc. Com.,* 199 Or 668, 672, 264 P2d 1037 (1953). To the same effect, see Annot., 45 ALR2d 1011 (1956).

■■ Even when property previously owned by the partners has been contributed to a partnership, the partners may subsequently transfer the ownership of such property back to the partners. ORS 68.420(2)(b) provides:

> "A partner's right in specific partnership property is not assignable except in connection with the assignment of the rights of all the partners in the same property."

The clear implication of this section is that partnership property may be assigned by a joint act of all the partners. Thus, as held in *Johnson v. Jackson,* 82 F Supp 915, 918 (ED Pa), *aff'd,* 173 F2d 223 (1949):

> "In the absence of the proved intention to delay or defraud creditors, there is no legal objection to a transfer of partnership property from the firm to one of the partners."

*Cf. Gertz v. Fontecchio,* 331 Mich 165, 49 NW2d 121, 124 (1951).

■ In our judgment, the letters by Mr. Raley, as attorney for Leo and Ruth Gorger, as written to them and to their accountant in 1959, prior to the death of Ruth Gorger, if genuine, together with the 1959 lease by Leo and Ruth Gorger, as owners of the Ione ranch, to the partnership, so as to permit its *use* by the partnership, while retaining title in themselves, compel the conclusion that even if there may have been a

previous "contribution" of that ranch to the partner-ship, the partners agreed and intended in 1959 that it be withdrawn from the partnership and held in an estate by the entireties, in accordance with the terms of the original deeds.

The disregard of these letters by the trial court upon the ground that they were "questionable" can only be sustained by a finding that they were not prepared until after the death of Ruth Gorger and were then prepared as a part of a conspiracy between Leo Gorger and his attorney, Mr. Raley, to defraud his children. This is a most serious charge, not only against Leo Gorger, but also against his attorney, James H. Raley, now deceased.

Upon examination of the record, we do not believe that the evidence sustains such a serious charge but that, on the contrary, it requires us to hold that these letters by Mr. Raley were in fact written in 1959, prior to the death of Ruth Gorger in 1961. The most compelling evidence in support of this conclusion is the lease, which not only was dated February 25, 1959, but was recorded on June 29, 1959, long prior to the death of Ruth Gorger in 1961. The obvious purpose of this lease was to carry into effect the proposals by Mr. Raley in his earlier letter to Leo and Ruth Gorger to the effect that the Ione ranch should be considered as being owned by them in an estate by the entireties, and leased for use by the partnership, rather than being held by it as a partnership asset.[4] We believe that the signing of this lease by Leo and Ruth Gorger in 1959 was the best and most persuasive evidence of the intent of Leo and Ruth Gorger to approve and make effective at that time the recommendations by their attorney.

It is true, as pointed out by plaintiffs, that Mrs. Cosper, who kept the partnership accounts, did not

---

[4] It is also significant that plaintiffs, in their brief, recognize that the reason the lease was predated as of December 1956 was "to make it effective prior to the gift deeds on Ione Farm to the children."

follow the instructions of Mr. Raley, as set forth in his separate letter to her, but continued to prepare partnership records showing the Ione ranch to be a "fixed asset" of the partnership. As previously stated, however, the question whether the Ione ranch was contributed to or withdrawn from the partnership is a question to be determined by the intent of the partners. Although the practice of the accountant of the partnership may be evidence of that intent, such practice is not controlling on that issue, at least under the facts of this case. In our judgment, the evidence of the continuing accounting practices of Mrs. Cosper is not sufficient to overcome the effect of the execution of the lease in 1959.

It is also of interest to note that Mrs. Cosper was then becoming elderly, as shown by the testimony that she retired from her occupation as an accountant in 1969 because she was "old." In addition, there was testimony that she did not appear as a witness because she was in very poor health at the time of trial. There was also testimony that, contrary to the testimony of plaintiffs' expert witness, the 1959 letter to Mrs. Cosper from Mr. Raley was subsequently found in one of the boxes of partnership records which were delivered to Leo Gorger by Mrs. Cosper when she retired and were then stored in his home. Even in the absence of such testimony, however, the evidence of the execution and recording in 1959 of the lease by Leo and Ruth Gorger, as previously discussed, was persuasive and compelling evidence on this issue, in our judgment.

For these reasons, we hold that the trial court erred in finding that when Ruth Gorger died in 1961 the Ione ranch was not held in an estate by the entireties, but was partnership property, and in holding that an undivided one-half of the interest of Leo and Ruth Gorger in that ranch went into the trust for her children as established by her will. It also follows that the trial court erred in surcharging Leo Gorger, as trustee, with the sum of $33,137.26 as income received

by him from his interest in that ranch for the years 1962 through 1973.[5]

## 2. *Depreciation of assets.*

The decree of the trial court provided that defendant Leo Gorger pay and distribute to the trust the sum of $61,287.51, to be paid from funds of the partnership as "undistributed income arising from accounting depreciation from assets."

Defendants contend that this was error because: (1) it was conceded by plaintiffs that it is the practice of accountants for partnerships not to distribute depreciation as income; and (2) plaintiffs have chosen to acquiesce in the continuation of the partnership business (rather than to demand its liquidation as of the death of Ruth Gorger) and have accepted the benefits of its continuance, including distribution of substantial profits.

Plaintiffs respond with the contention that their "waiver" was "limited to the continuance of the [partnership] business and not to determination of distributable income arising during the term of the trust * * *" and that "[w]hile it is the practice of accountants in partnerships not to distribute depreciation as income, the rule is otherwise in the case of trusts."

It may be the rule that if a trust is engaged in the operation of a business, all income must be distributed to its income beneficiaries, without deductions for a reserve depreciation of assets for the benefit of the remaindermen. In this case, however, the trust, as a trust, has not been engaged in the operation of a business. Instead, the trust (which includes the assets of the estate of Ruth Gorger) has been at least a de facto partner with Leo Gorger as the continued operator of Leo Gorger Ranches, the former partner-

---

[5] As previously noted, under the gift program undertaken prior to the death of Ruth Gorger and continued after her death by Leo Gorger, the children had by 1962 acquired over 90 percent of the ownership of the Ione ranch.

ship of Leo and Ruth Gorger. Leo Gorger simply continued the partnership business as in past years, substituting the trust as a partner for his deceased wife.

■ Under these circumstances, we believe that when plaintiffs made the decision to agree to the continuation of that partnership business (instead of demanding its liquidation as of the death of Ruth Gorger) and to accept the benefits, including profits, from its continued operation, it follows that the accounting practices relating to the depreciation of its assets are to be controlled by the usual and accepted accounting practices for the operation of a partnership.

Although not directly in point, the problem in this case has some similarity with that involved in *Ryan v. Plath*, 20 Wash 2d 663, 148 P2d 946, 950 (1944), in which it was held that:

> "In our opinion, appellant * * * should not be allowed to ratify this transaction in part and avoid it in part. What appellant is in effect attempting to do * * * is to accept the benefits of the transaction * * * and is claiming a technical breach of trust * * *."

We also believe that this result is in accord with the intent of Ruth Gorger, as expressed by the trust provisions of her will. These provisions conferred broad powers and discretion upon Leo Gorger.[6] According to the testimony, one of the primary purposes of

---

[6]That trust instrument provided as follows:

"My executor or my trustee may freely act under all or any of the powers given to him by this Will in all matters concerning my estate and the trusts herein created, and after forming his judgment based upon all the circumstances of any particular situation and in accordance with such judgment as to the wisest and best course to pursue, without the necessity of obtaining the consent or permission of any person interested therein or the consent or approval of any court and notwithstanding that he may also be acting, either individually, or as trustee of the trusts herein created or other trusts, or as agent for other persons or corporations interested in the same matters, or may be interested in connection with the same matters as individual, stockholder, director or otherwise, and the bequests, in trust, or otherwise, made by me have been so made in contemplation of such freedom of judgment and action."

these broad provisions was to "build as much control" as possible into the trust so as to enable Leo Gorger to preserve the trust assets for the protection of the interests of the children, according to his best judgment. In this case, the children, including plaintiffs, are not only the income beneficiaries of the trust, but also the remaindermen. Thus, the effect of the reserve for depreciation of assets has been to postpone the distribution of such assets to the same beneficiaries. As stated by the trial court, there is in this case "no charge of diminution of trust corpus or material losses to [its] assets."

For these reasons, we hold that it was error for the trial court to order Leo Gorger to distribute $61,287.51 to the children from the funds of the partnership as "undistributed income" from "depreciation of assets."

### 3. *The Tapadera Motel loans.*

Plaintiffs' complaint sought to cancel loans made by Leo Gorger of trust funds to The Dalles Tapadera, Inc., and Lewiston Tapadera, Inc., and to require restitution to the trust for the amounts of the remaining balances due to it under these loans. Two hundred sixty thousand dollars was loaned to The Dalles Tapadera, Inc. Two loans, of $40,000 and $35,000, were made to the Lewiston Tapadera, Inc. Plaintiffs alleged that the loans were improper as investments of trust funds because they were made to businesses in which Leo Gorger had an interest, were speculative and were made without adequate security.

Defendants contend, to the contrary, that the provisions of the trust specifically authorized the trustee to exercise his free and independent judgment in all such matters notwithstanding the fact that he had an interest as a stockholder or otherwise in corporations to which such loans were made.[7]

The trial court held that the loan of $260,000 to The Dalles Tapadera was not improper under the circum-

[7]For trust provision see n.6.

stances, but that the loans to the Lewiston Tapadera were improper; that the balance due on the $40,000 loan must be repaid by Leo Gorger to the trust and that the balance on the $35,000 loan must be charged to his capital account.

■ In view of the broad powers conferred upon the trustee by the terms of the trust, including the power to deal in good faith with coporations in which he is interested, we may doubt the correctness of this ruling. *Cf. Stephan v. Equitable S & L Assn.*, 268 Or 544, 564-65, 522 P2d 478 (1974). *See also* Restatement 2d Trusts §§ 170 and 187 (1959). We need not decide this question, however, because the balances due under these loans have now been paid in full, according to exhibits filed since the entry of the decree under an order permitting the record to be supplemented by the filing of such exhibits.

4. *The surcharge of the trustee for excessive trustee fees and accounting fees.*

The decree of the trial court would also surcharge Leo Gorger with the sum of $16,000 in reimbursement of "excess trustee's fees."

For five years (1961 until 1966) Leo Gorger made no charge against the trust for his services. Beginning in 1966, however, and for the subsequent eight years, he charged $6,000 per year for such services, or a total of $48,000. Of that amount he drew $12,000 in cash and left the remaining $36,000 in the business as operating capital, although credited to his account.

The trial court found, based upon "the full history of the matter," that a fee of $4,000, or a total of $32,000, was "just and equitable" and ordered that Leo Gorger be surcharged for all sums in excess of that amount paid to him or credited to his account. Defendant Leo Gorger assigns this as error.

Plaintiffs' response is simply that

"The trial court determined what was deemed to be a reasonable trustee fee, taking into consideration all the

[ 285 ]

facts of the case. Whether Mr. Gorger received fees prior to 1966 is irrelevant, since he waived them during this period."

If the "full history of the matter" was limited to testimony and other evidence upon the subject of the nature of the services performed by Leo Gorger as trustee and the reasonable value of such services, we might agree. In our judgment, however, a review of the "full history" reveals that other and additional facts and circumstances must also be considered in any fair determination of this question.

First of all, it is not entirely clear that Leo Gorger intended to waive any and all claim to compensation for his services as trustee. During those years he continued to manage the various properties and investments of the trust and devoted a substantial amount of time to the performance of these duties, as well as the performance of physical work in the operation of the Pendleton ranch. One of the children described these services as involving "hours and hours beyond which any of us had comprehended."

In any event, at a family conference in 1966 the subject of some compensation for such services was first discussed with his children. According to plaintiff Donald Gorger, his father then suggested that he be paid $6,000 per year for such services. Some of the other children testified that the $6,000 figure was not suggested by their father, but by one of the daughters, and that, in their opinion, such a fee was not unreasonable. Regardless of who suggested that figure, plaintiff Donald Gorger testified that he and his brothers and sisters then agreed that $6,000 per year be paid to their father for his services as trustee, although saying that they had no "standard" to which to "relate" that figure.[8]

---

[8] According to Scott, Trusts 1943, § 242.7 (2d ed 1956):

"If the amount so fixed is more than the amount to which the trustee would otherwise be entitled, he is entitled to the amount agreed upon, unless he was guilty of an abuse of his fiduciary position in inducing the beneficiaries to enter into the agreement."

Thereafter, and up to the filing of this lawsuit, none of the children apparently ever objected to such compensation, and in that amount. As previously stated, most of such fees were not paid to Leo Gorger in cash, but were left by him in the business as working capital, although credited to his account.

For six of the eight years involved (1966-1971) Leo Gorger continued to manage the trust properties in much the same manner as in previous years, including work in the operation of the Pendleton ranch. As recognized by the trial court, there was evidence that it would have cost $12,000 per year to hire a manager for that ranch. In 1971 that ranch was leased out, with the result that during the last two years he no longer engaged in the actual operation of that ranch. He continued, however, as the active manager of the trust estate.

■ Under these facts and circumstances, and regardless of whether or not there may have been a "waiver" by Leo Gorger of compensation for his services as trustee for the first five years, we hold that the sum of $6,000 per year for his services for the remaining eight years was not unreasonable, when considered in the light of the "full history of the matter," and that he should not be surcharged for any portion of the amounts paid or credited to him for such services.[9]

—*Accountant fees.*

The trial court decree also surcharges Leo Gorger, as trustee, for $875 for "excess accountancy fees." Defendants assign this as error.

■■ The accountant made a practice of billing 50 percent of her services to the trust and 50 percent to the partnership. Based upon testimony by an accountant called by plaintiffs as a witness, the trial court found that a disproportionate percentage of these charges

[9]Defendants have not, however, assigned as error the provision of the decree setting the annual fee of the trustee for the years beginning 1974 at the sum of $4,000.

[ 287 ]

was billed to the trust. We are not bound by that finding on this de novo appeal. In such cases, however, we accord considerable weight to findings by a trial judge who heard and observed the witnesses. We approve and affirm these findings by the trial court.

5. *Surcharge of Leo Gorger for expenses and taxes paid from partnership funds.*

The trial court decree would surcharge the capital account of Leo Gorger the sum of $30,717.12 on account of "personal expenses paid from the income of the operation of such partnership business." This is also assigned as error by defendant Leo Gorger.

In the operation of the ranching partnership Leo Gorger continued to pay from partnership funds, as in previous years, the expenses incident to the house on the Pendleton ranch, as well as some other expenses. These expenses included utilities, "gas and oil," auto maintenance, travel expense, fire insurance and taxes on the house.

By the will of Ruth Gorger, her interest in the Pendleton ranch house was left to Leo Gorger. The Pendleton ranch, except for the house, however, continued to be considered and treated as an asset of the partnership. Leo Gorger actively operated that ranch until 1970, after which it was leased to a tenant for operation, although Leo Gorger continued to live in the house.

The trial court surcharged Leo Gorger with $6,193.12 for utility expenses, representing one-half of the utilities for the years 1962 through 1970 (during which he actively operated the Pendleton ranch), and the entire expense for utilities for subsequent years. The trial court also surcharged Leo Gorger with $6,198.52 for "gas and oil," representing one-fourth of the expense for gas and oil purchased at the Pendleton ranch for the years 1962 through 1971 and the entire expense for gas and oil for subsequent years.

Similarly, the trial court surcharged Leo Gorger

with $1,824.87 for auto maintenance on his automobile, representing one-half of that expense through 1970 and the entire amount thereafter, and the sum of $1,835.71 for travel expenses, again representing one-half of that expense through 1970 and the entire amount after that year, when he discontinued operating the wheat ranch and started concentrating on his motel investments. In addition, the trial court surcharged Leo Gorger with $3,264.36 for "repairs" which were found to constitute "improvements" to the house, some of which were incurred after 1970.

In support of the position that the trial court erred in surcharging Leo Gorger for these items, it is contended that he worked on the ranch without compensation; that the trust was "utilizing almost $200,000 of partnership money without paying interest thereon" and that from 1970 to 1973 he was counseled by his accountant "in regard to the allocation of expenses"; that his accountant took into consideration the fact that he owned the house and automobiles, but that they were being used by the partnership in the production of income, and that his accountant told him that this allocation was entirely proper. Defendants also say that for plaintiff Donald Gorger, who had already received over $70,000 in distributions from the trust, to surcharge his father for such items was unjust treatment "of the man who built the whole thing" and that such a decision is "incredible."

We may sympathize with these views. These considerations cannot, however, excuse at least substantial compliance by the trustee of a family trust with the duties and responsibilities imposed by law upon all trustees.

█ █ A trustee is entitled to reimbursement from the trust for reasonable and necessary expenses incurred by him in the discharge of his duties as trustee. *State Farm Mut. Auto. Ins. Co. v. Clinton*, 267 Or 653, 656, 518 P2d 645 (1974). Nevertheless, we have held that "before he is entitled to be credited for such expendi-

tures, he has the duty as trustee to identify them specifically and prove that they were made for trust purposes." *Jimenez v. Lee,* 274 Or 457, 462, 547 P2d 126 (1976), citing Bogert, Trusts and Trustees 10-13, § 962 (2d ed 1962). *See also Wood et al v. Honeyman et al,* 178 Or 484, 556, 169 P2d 131 (1946).

It may be true, as stated in *Wood et al v. Honeyman et al, supra* (at 570), that when, as in this case, a trust is a "family affair," a trustee may be justified in the belief that he will not be required for this purpose to maintain records as complete as if he were acting for strangers. Nevertheless, the burden of proof is still upon the trustee.

After an examination of the records produced by Leo Gorger and his accountant, together with their testimony, we are compelled to agree with the conclusion reached by the trial court to the effect that such records were not sufficient to support an allocation of these various items in the manner contended for by the trustee. On the contrary, we believe that the evidence, when taken as a whole, supports the allocation of these items as made by the supplemental findings of the trial court. We approve and affirm these findings.

Whether or not Leo Gorger is also entitled to charge the trust estate for other items, such as interest on moneys advanced to the trust, is another matter, to be discussed subsequently.

—*Real estate taxes.*

We believe, however, that the trial court erred in surcharging Leo Gorger for the sum of $9,365.02 for real property taxes on the Pendleton ranch house for the period during which he was still actually engaged in the operation of that ranch and before it was leased out for operation.

Prior to the death of Ruth Gorger these taxes had been charged to the partnership, in accordance with

what was the general practice among ranchers at that time, and that practice was apparently approved for tax purposes. It may be true that the Department of Internal Revenue no longer permits taxes on ranch houses to be charged as business expenses for income tax purposes. That, however, was not the basis for the trial court decision on this item, which was instead apparently based upon the finding that:

> "* * *[P]ayment of real property taxes on the personal residence of defendant Leo Gorger from funds of Leo Gorger Ranches was knowingly done and without attempt to segregation of his personal obligation * * *."

We fail to understand how the trial court could properly find that one-half of the expenses incurred for utilities for the Pendleton house during the period when Leo Gorger was actively operating the Pendleton ranch, together with one-half of other related items, were properly chargeable by him to the trust estate for the years 1962 through 1970 and yet, at the same time, surcharge him with the entire amount of taxes on the house during that period. In our view, both utilities and taxes were expenses of maintaining the Pendleton house during that period and were thus items to be allocated, at least in part, to the operation of the ranch.

For the same reasons, we hold that the trial court erred in surcharging Leo Gorger for $2,030.52 for fire insurance on the ranch house for that entire period, instead of allowing him credit for payments for insurance for the years 1962 through 1970.

Accordingly, we hold that one-half of the amount of the taxes allocable to the Pendleton ranch house for the years 1962 through 1970, together with one-half of the payments for fire insurance on the house for the same period, should be charged to the partnership business; that the surcharge of Leo Gorger for such items should be limited to one-half of that amount for that period; and that the total amount of the surcharge

for "expenses" (including taxes) be reduced by that amount.

### 6. *Notes to children signed by Leo Gorger.*

The decree would surcharge Leo Gorger with personal liability for four promissory notes signed by him in 1958, payable to various of his children, and totaling $8,476.50. Defendants contend that this was error because the funds represented by these notes were paid into the partnership.

Plaintiffs do not directly deny that the funds represented by these notes were paid into the partnership. They contend, however, that Leo Gorger should nevertheless be not only charged with personal liability for such notes, but should not be permitted to pay them from partnership funds because each of the notes was executed by him and because "at the time of probate [the notes] were acknowledged by him to be his obligations."[10]

We have examined the records and documents referred to by plaintiffs in support of this contention. We do not believe, however, that they prove all of the admissions claimed for them by plaintiffs. They reveal considerable ambivalence in the treatment of these

---

[10] In support of this position plaintiffs say in their brief that:

"*The 1960 financial statement* (Ex. 3) *reflected a liability for notes payable to the Gorger children, as reflected by a note ledger account* (Ex. 94), of $13,208.37. The obligation was removed as a liability of the partnership in the estate inventory (Ex. 1, Br. A-45). When the *Gorger accountant* inquired about such removal March 12, 1962 (Ex. 84) *she* indicated on her working papers the notes were 'individually owned' (sic). Two of the [*other*] notes, Exhibits 130-F and 130-G [*signed by Ruth Gorger*] were then paid as claims against decedent's estate (Ex. 1, Br. A-65) as shown on the final account.

"* * * * *

"Note obligations existing at time of probate were indicated by Leo Gorger on a document (Ex. 95).

"* * * * *

"After deleting the notes as a partnership liability for purposes of the date-of-death financial statement (Ex. 4) *on the December 31, 1961 financial statement* (Ex. 5) *the full pre-death balance was shown, and continued to be shown thereafter in later computations* (Ex. 6, 7, 8)." (Emphasis added)

[ 292 ]

notes by the accountant during the period of the probate of the estate of Ruth Gorger. In our judgment, however, they are not sufficient to establish that these notes are not properly chargeable to the partnership as its obligations. Both prior and subsequent to the probate proceedings in 1961-62 these notes were shown on the records of the partnership as the obligations of the partnership, which received the funds from the notes.

We hold that these four notes are obligations of the partnership and that the trial court erred in paragraphs 12, 13, 14 and 15 of its decree in ordering that they be either paid by Leo Gorger or charged against his capital account in the partnership.[11]

Defendants also assign as error provisions of paragraphs 16 and 18 of the decree, relating to two other promissory notes. We have examined the record relating to them and find that these provisions of the decree were not improper.[12]

7. *Interest payable by trustee on Midtown rent. Interest payable to trustee on funds advanced by him to trust.*

Plaintiffs' complaint alleged that each year Leo Gorger collected $840 in rent due under a lease of trust property known as the Midtown Annex; that he deposited such money in his personal account, and that he "should be required to fully account therefor and to reimburse the trust for interest therefor compounded quarterly."

---

[11] Plaintiffs also contend, and the trial court found, that one of these notes, among others, was improperly "written off" on the partnership books in 1970 or 1971. We agree that this was improper, but hold nevertheless that the note is a partnership obligation.

[12] Paragraph 16 required the *partnership* to pay $1,400 to Patricia Forsythe as the balance due under a promissory note signed by Leo Gorger.

Paragraph 18 required Leo Gorger to charge $2,934.21 to his capital account in the partnership as the amount due under a promissory note to Donald Gorger, dated December 15, 1962 (after the death of Ruth Gorger).

Defendants admitted that these funds had been deposited in the personal account of Leo Gorger and that no interest had been paid on them, but offered evidence that each year the trust account statement included an item showing that he owed the trust for these moneys and that eventually he paid such moneys to the trust.

The trial court found that this withholding and commingling of funds was done knowingly and ordered that the trustee pay interest on such funds at six percent per annum in the amount of $3,350.85.

Defendants contend that it was error to enter judgment against the trustee in that amount, not because his handling of the Midtown rental payments was proper, but because he had personally made advances to the estate of his wife and to the trust of funds for payment of administrative expenses in excess of $156,000, for which he had charged no interest, and because he had not withdrawn over $100,000 from the business, as he was entitled to do, but left such funds in the business as working capital.

Defendants also cite our decision in *Hull v. Heimrich,* 138 Or 117, 127, 3 P2d 758, 6 P2d 41 (1931), for the application in a suit against a trustee by the beneficiaries of a trust of the familiar rule that one seeking equity must also do equity. Thus, defendants contend that "all that Leo Gorger is asking is that he be treated equitably," but that neither the plaintiffs nor the trial court have been willing to do so by giving him credit for interest due as a result of these far more substantial advances by him of funds to and for the benefit of the trust.

We hold that the trial court did not err in ordering the trustee to pay the trust the sum of $3,350.85 for interest on the Midtown rentals collected by him. We agree with defendants, however, that the trial court was in error in refusing to give the trustee credit for

interest on funds advanced by him to and for the benefit of the trust estate.

■ ■ A trustee may advance his own money in discharging trust obligations where there are insufficient funds in the trust estate. The trustee will be entitled to reimbursement of such advances and may also be entitled to interest on them. Scott, Trusts § 244 (2d ed 1956). The same rule may apply to advances by a partner. See Annot., 66 ALR 4, 17 (1930). *See also Kraus v. Kraus,* 250 NY 63, 68, 64 NE 743 (1928) (opinion by Cardozo, J.).

Defendant Leo Gorger offered the testimony that in 1962 he advanced personal funds in the sum of $156,010.89 for payment of inheritance taxes on the estate of his deceased wife; that there were insufficient liquid assets to pay the estate taxes at that time; that if such an advance had not been made the Pendleton ranch would have had to be sold; and that the children agreed with his decision that the Pendleton ranch should not be sold to pay such taxes, but that he should advance the funds for payment of such taxes.

■ We hold that under these circumstances Leo Gorger is entitled to interest on such advances and that upon remand of this case to the trial court it should determine the amount of such advances by Leo Gorger and credit his capital account in the partnership with interest at six percent per annum on such advances.[13]

8. *Accounting as "moot" — bank as co-trustee.*

The trial court found that plaintiffs' demand for an accounting had become "moot in view of the record." Thus, the decree of the trial court provided that the accounting of the trust estate, including its interest in the partnership, "has been determined and settled in

---

[13] This does not, however, include funds earned by the partnership and not distributed, but left by Leo Gorger in his partnership capital account as working capital. In the absence of agreement between parties to the contrary, no interest is payable on such funds. See Annot., 66 ALR 6 (1930).

accordance with the findings of this Court and as set forth in this decree."

Defendants assign this as error and also assign as error the holding by the trial court that Leo Gorger had not "properly accounted," as well as the "manner" in which the trial court ordered adjustments of the accounts. In support of these assignments of error defendants contend that Leo Gorger submitted as his accounting the records of the partnership and trust; that plaintiffs should be required to specify their objections to this accounting; and that the case should be remanded to the trial court for that purpose.

We believe, however, that the various allegations of plaintiffs' complaint relating to the various matters discussed in this opinion were sufficient as objections to such an accounting by the trustee; that all of such matters have now been resolved; and that no useful purpose would be served by remanding the case for further accounting proceedings, except for the limited purpose of determining the amount of funds advanced by Leo Gorger to and for the benefit of the trust, as previously discussed, and computing the amount of interest to which he is entitled to credit for such advances, at the rate of six percent per annum. At the same time, the trial court should also compute and charge Leo Gorger with interest at six percent per annum on all sums found to be properly chargeable against him, as set forth in this opinion.

The trial court rejected plaintiffs' request that Leo Gorger be removed as trustee. However, the final decree would remove Robert Gorger, one of the children, as co-trustee and would appoint the United States National Bank as co-trustee. Defendants assign this as error.

As previously noted, and as stated by the trial court, there is in this case "no charge of diminution of trust corpus or material losses to [its] assets" under the trusteeship of Leo Gorger, with Robert Gorger as co-trustee. Despite that fact, in view of the discord in

the family, we do not believe that the trial court erred in holding, in effect, that it would be to the best interests of the trust estate to have a neutral co-trustee, rather than any one of the Gorger children.

9. *Dissolution of partnership.*

The decree of the trial court also provides that:

"* * * Leo Gorger Ranches partnership is dissolved and all proceedings under this decree pertaining to said partnership shall be proceedings in winding up said partnership."

Defendants assign this as error, contending that although the partnership between Leo and Ruth Gorger was dissolved on her death, a new (de facto) partnership continued after her death; that if no such new partnership existed, Leo Gorger is then in the position of a "continuing partner" of the original partnership and the trust is "in the position of a creditor," by reason of the provisions of ORS 68.640; that if such a partnership did exist after Ruth's death, Leo Gorger desires to continue it, but that if the partnership (either old or new) must be dissolved, dissolution must be "in accordance with the provisions of ORS 68.600."

Plaintiffs recognize that a de facto partnership existed after the death of Ruth Gorger for the purpose of continuing the business formerly conducted by Leo and Ruth Gorger as partners under the name Leo Gorger Ranches. Indeed, plaintiff Donald Gorger testified that he elected to waive the provisions of the partnership agreement for dissolution of the partnership because he believed

"* * * that something * * * has been handled a certain way, this was a long time ago and * * * should remain as it is * * *."

Plaintiffs' complaint, however, prayed for an order:

"Dissolving business relationships of the Ruth J. Gorger trust from the business operation known as Leo Gorger Ranches and distributing assets of trust therefrom as alleged herein."

[ 297 ]

Plaintiffs' position is that the order of the trial court was not in error for the reason that:

"* * * [S]ince this is a trust case the powers of the equity court control the disposition of the trust assets involved in this situation and the trial court is not bound by the terms of the partnership statutes in determining solutions to dissolution and winding up of the affairs of the trust."

It may be that an equity court may control the disposition of trust assets. Plaintiffs cite no authority, however, in support of their apparent contention that when trust assets include assets previously owned by a deceased partner in a partnership, a court of equity can disregard provisions of statutes which would otherwise provide the manner in which such a partnership must be dissolved. *Cf. Niagara Mohawk Power Co. v. Silbergeld,* 294 NYS2d 975, 58 Misc 2d 285 (1968), holding that the rights of a deceased partner are governed by partnership law, rather than by probate law.

It would appear to us that upon the death of Ruth Gorger the previously existing partnership was dissolved, as a matter of law; that whether or not Leo Gorger, in continuing the operation of the business, did so as a "de facto" partnership or as a "continuing partner," is not controlling in deciding the questions now at issue, namely: (1) whether plaintiffs are entitled to demand that this "business relationship" now be discontinued and that its assets be "distributed" and, if so (2) whether the dissolution of the partnership and the liquidation of its assets must be done in accordance with the provisions of the Uniform Partnership Act, ORS ch 68, including ORS 68.600 and 68.640, or whether a court of equity "is not bound" by such provisions.

We agree with the holding of the trial court to the effect that under these circumstances the plaintiffs were entitled to demand a dissolution of this "business relationship" and a distribution of its assets.

We do not agree, however, that in doing so the trial

court "is not bound" by the provisions of ORS 68.600 and 68.640. On the contrary, we hold that the partnership previously existing between Leo and Ruth Gorger was legally "dissolved" upon her death and that the "winding up" of its affairs and the liquidation of its assets must now be done under and in accordance with the provisions of ORS ch 68, including ORS 68.600 and 68.640. Accordingly, this case is remanded to the trial court for that purpose.

In doing so we do not now decide whether, in that process, and in the absence of some further agreement between the parties, all of the assets of the partnership must be sold and the proceeds, after payment of its liabilities, distributed to Leo Gorger and to the beneficiaries of the trust established under the will of Ruth Gorger (as would appear to be the position of the defendants), or whether such assets, including the Pendleton ranch, may be "distributed" as property jointly owned as tenants in common (as would appear to be the desire of the plaintiffs). That question, however, has not been presented for decision on this appeal in that it has not been briefed or argued by either party. But see ORS 68.600(1).[14]

10. *Litigation expenses and attorney fees.*

The trial court found that:

> "* * * [T]he commencement of these proceedings were for the benefit and enhancement of the trust and therefore plaintiffs shall be entitled to recover their attorney fees, accountancy costs, and litigation expenses, * * * incurred subsequent to commencement of controversy in September, 1972."

The final decree awards to plaintiffs for these purposes the sum of $27,334.15—the full amount requested by them.

---

[14]ORS 68.600(1) provides:

"When dissolution is caused in any way, except in contravention of the partnership agreement, each partner, as against his copartners and all persons claiming through them in respect of t eir interests in the partnership, unless otherwise agreed, may have the partnership property applied to discharge its liabilities, and the surplus applied to pay in cash the net amount owing to the respective partners. * * *"

The trial court also held that:

"Because the court finds this litigation properly commenced and the trustee at fault, the court is not permitting any such expenses to be charged against the trust and finds the use of trust funds not for the benefit of the trust, but for the benefit of the trustee only, improper."

The final decree ordered Leo Gorger to "restore" to the trust the sum of $6,193.85 withdrawn from it for litigation expenses, together with any other trust funds paid for such expenses.

We recognize that the award of attorney fees and litigation expenses in such a case is a matter largely within the discretion of the trial court. We believe, however, that the allowance of such expenses by the trial court in such a case is properly subject to review by this court when, as in this case, it appears that many of plaintiffs' claims against the trustee, as sustained by the trial court, were improper and that much of the conduct of the trustee, as attacked by plaintiffs and disapproved by the trial court, was proper.

In this case, in response to demands by plaintiffs, the trial court surcharged the trustee for various items totaling approximately $100,000, in addition to its order that his interest in the Ione ranch be included in the trust; that he pay the balance due on the Tapadera notes, totaling $75,000, and that withheld "depreciation" of $61,000 be distributed to the trust beneficiaries. If plaintiffs' position on all, or nearly all, of such items had been correct and if the trustee's conduct relating to all, or nearly all, of them had been improper, we might agree that the trust would have benefited to the extent that plaintiffs would be entitled to $27,000 in attorney fees and litigation expenses, as claimed by them, and that the trustee would not be entitled to charge against the trust any of the attorney fees and litigation expenses incurred by him.

[ 300 ]

For reasons previously stated, however, we have held that plaintiffs' position on most of such items was incorrect and the trustee's conduct relating to them was correct. Indeed, instead of recovering approximately $100,000 for the trust from the trustee, as demanded by plaintiffs and as held by the trial court, the recovery from the trustee on the items approved by this court is less than $40,000; plaintiffs' claims relating to the Ione ranch and withheld depreciation were denied, and the Tapadera notes have been paid. We have also held that the trustee's conduct relating to most of the matters complained of by plaintiffs was proper and that Leo Gorger is entitled to credit for interest on money advanced by him to or for the benefit of the trust.

We do not overlook the findings of the trial court that on occasion Leo Gorger "fail[ed] to disclose information to the beneficiaries" and that he "treated the trust in a rather cavalier manner." Indeed, we recognize that this suit may have been of some benefit to the beneficiaries of the trust because of the resulting disclosures and accounting.

After considering all of the facts and circumstances relating to this long and bitter family controversy as best we can, it is our best judgment that plaintiffs are entitled to payment from the trust of not more than one-half of the attorney fees and litigation expenses incurred by them in the trial court and that defendant Leo Gorger is entitled to payment from the trust of one-half of the attorney fees and litigation expenses incurred by him in the defense of this suit in the trial court.

For all of these reasons, this case is remanded to the trial court for further proceedings consistent with this opinion.[15]

[15] Plaintiffs also assign as error the failure of the trial court to require plaintiffs to state their causes of suit separately; the permitting of the joinder of various causes of suit, and the denial of defendants' motion to take the deposition of Lillian Cosper, Leo Gorger's accountant prior to 1969. Because of the nature and basis of our disposition of this case it is not necessary to decide these questions.